**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: January 25, 2023.**



_____
**CRAIG A. GARGOTTA
CHIEF UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 22-50725-CAG |
| | § | |
| ROSEMARY PEREZ, | § | CHAPTER 13 |
| | § | |
| Debtor. | § | |

### ORDER OVERRULING OVATION SERVICES LLC AS AGENT FOR FGMS HOLDINGS, LLC'S AMENDED OBJECTION TO DEBTOR'S CHAPTER 13 PLAN (ECF NO. 26)

Came on for consideration Ovation Services LLC as Agent for FGMS Holdings, LLC's ("Ovation") Amended Objection to Debtor's Chapter 13 Plan (ECF No. 26)[1] ("Amended Objection") and the Chapter 13 Trustee ("Trustee") Response thereto (ECF No. 27) ("Response"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) (confirmation of a plan). Venue is proper under 28

---

[1] "ECF" denotes the electronic case filing number in this case.

U.S.C. § 1408(1). The Court took the matter under advisement. For reasons discussed below, the Court finds that the Amended Objection is OVERRULED.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

Sometime before Debtor filed bankruptcy, she executed a Promissory Note secured by a Deed of Trust -Tax Lien with FGMS Holdings, LLC in exchange for payment of the ad valorem taxes owed on her home. (Proof of Claim No. 4). Ovation, thus, holds a statutory lien. Proof of Claim No. 4 reflects that Ovation is oversecured, entitling it to post-petition attorney's fees and costs.[3] 11 U.S.C. § 506(b). The heart of this dispute concerns whether Ovation may seek payment of its post-petition attorney's fees and costs outside the bankruptcy or, in the alternative, if it must seek payment through the bankruptcy, if at all.

The Court held a hearing on confirmation of Debtor's chapter 13 amended plan (ECF No. 21) ("Plan") on October 25, 2022. Debtor appeared but did not testify. Counsel for Ovation and Trustee appeared and made argument. The Court admitted Ovation's Exhibits 1-4 which consisted of Ovation's filed proof of claim, a copy of the case docket sheet, Debtor's amended plan, Debtor's schedule of assets and liabilities, and Debtor's statement of financial affairs. A review of the electronic docket in this case indicates the following:

1. Debtor filed her chapter 13 petition, schedules, plan, and SOFA on July 2, 2022. (ECF Nos. 1 and 2).

2. Ovation filed its original objection to Debtor's plan on August 4, 2022. (ECF No. 11).

---

[2] The Court is not prepared to confirm Debtor's chapter 13 plan until the Trustee advises the Court that all confirmation requirements, including feasibility, have been met. As such, the Court rescheduled confirmation of Debtor's Plan to February 16, 2023.

[3] The Court is not making the finding at this time that Ovation is oversecured. A creditor who asserts it is oversecured "bears the ultimate burden to prove by a preponderance of evidence its entitlement to postpetition" amounts. **Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (Matter of T-H New Orleans Ltd. P'ship)**, 116 F.3d 790, 798 (5th Cir. 1997) (citing **In re Grabill Corp,**, 121 B.R. 983, 991-92 (Bankr. N.D. Ill. 1990)). Rather, the Court simply notes that the Proof of Claim reflects a claim for $34,667.38 secured by property valued at $72,780.00. Proof of Claim No. 4, part 9.

2

3. Debtor amended her schedules and chapter 13 plan on September 15, 2022. (ECF Nos. 14 and 15).

4. Debtor amended her chapter 13 Plan on October 14, 2022. (ECF No. 21). This iteration of Debtor's Plan is the operative plan for purposes of confirmation.

5. Trustee filed her response to Ovation's original objection to plan on October 20, 2022. (ECF No. 25).

6. Ovation filed its Amended Objection to Debtor's Amended Plan on October 20, 2022. (ECF No. 26).

7. Trustee filed her Response to Ovation's Amended Objection on October 27, 2022. (ECF No. 27).

## LEGAL STANDARD

Sections 1322 and 1325 of Title 11 govern confirmation of a chapter 13 plan. Fed. R. Bankr. P. 3015(f)[4] prescribes the deadline for filing objections to chapter 13 plans and parties that must be served with the objection. The Court's Standing Order 16-01[5] ("Standing Order") provides that:

> A creditor objecting to confirmation of the plan must file an objection to the Plan no later than fourteen (14) days before the confirmation hearing date. Failure of a creditor to affirmatively and timely object to a proposed plan constitutes acceptance of the Plan, including secured claim, under § 1325(a)(5)(A).

The chapter 13 debtor has the burden of meeting all the confirmations requirements under 11 U.S.C. §§ 1322 and 1325. *Viegelahn v. Essex*, 452 B.R. 195, 198 (W.D. Tex. 2011) (citing *Suggs v. Stanley (In re Stanley)*, 224 Fed. App'x 343, 346 (5th Cir. 2007)).[6]

---

[4] Hereinafter referred to as "Rule(s)".
[5] Standing Order Relating to Chapter 13 Practices in the San Antonio Division, dated August 5, 2016.
[6] All references are to Title 11, 11 U.S.C. § _ et seq. unless otherwise noted.

3

## PARTIES' CONTENTIONS

Ovation, in its Amended Objection, makes the following objections to Debtor's Plan:

(1) Fed. R. Bankr. P. 3015 requires that the Trustee must file a written objection to a debtor's chapter 13 plan to have standing to object to confirmation of a debtor's plan. Further, Ovation argues that Trustee's failure to file a written objection to Debtor's Plan renders Trustee's Response to Ovation's Amended Objection moot because Trustee does not have standing. Finally, Ovation argues that Trustee's reliance on the Court's Standing Order is misplaced because the Court's Standing Order cannot supplant the Federal Rules of Bankruptcy Procedure.

(2) Ovation asserts that as a statutory tax lien holder, the proper way to contest the proper amount of Ovation's post-petition attorney's fees and costs is to seek a determination under § 505. Conversely, Ovation contends that compelling Ovation to seek allowance of its post-petition attorney fees and expenses by filing a motion or application under § 506 is improper. Ovation also argues that it is not subject to Rule 2016, which requires filing a disclosure of compensation or fee application for post-petition attorney's fees and costs.

(3) Ovation contends that its statutory lien cannot be released and discharged through the District Form Chapter 13 Plan after its pre-petition claim is paid in full. Rather, Ovation asserts its lien survives until its post-petition attorney's fees and costs are paid in full, Ovation argues that its lien passes through bankruptcy unaffected by the Plan and that Ovation's lien cannot be avoided under the Plan.

The Trustee filed her Response to Ovation's Amended Objection and argues the following:

(1) Trustee has the statutory authority under § 1302 to appear and be heard on confirmation of all chapter 13 plans. Further, neither § 1302 nor Rule 3015(f) require the Trustee to file a written objection.

4

(2) The Court's District Form Chapter 13 Plan states under § 7.8 payment of a secured creditor's claim results in satisfaction of the secured creditor's claim and release of the secured creditor's lien.[7] Further, should Ovation wish to assert a claim for post-petition attorney's fees and costs, Ovation should do so pursuant to § 506. Additionally, Texas Finance Code § 351.0021(a)(5) indicates that when a property owner files bankruptcy, the property owner may recover attorney's fees and costs. Trustee notes Ovation's proof of claim makes a specific reservation to seek attorney's fees and costs notwithstanding Ovation's argument that it cannot be compelled to seek post-petition attorney's fees and cost in a bankruptcy case.

(3) Trustee contends that Ovation should be required to submit periodic disclosures for its post-petition attorney's fees and costs through notice, motion, or fee application.[8] By doing so, the Court, debtor(s), and creditor(s) would know any potential post-petition claims that could render a debtor's plan infeasible and subject a chapter 13 case for dismissal.

(4) Trustee argues that § 506 apples to Ovation's claim and that Ovation must file an application or motion to have its post-petition claim paid. Otherwise, any post-petition claim should be discharged. Trustee argues that a bankruptcy court is the proper forum to adjudicate the reasonableness of Ovation's post-petition attorney fees and costs. Moreover, Rule 2016 requires Ovation to file an application with the Court to have its post-petition attorney's fees and costs paid.

---

[7] Section 7.8 of the District Form Chapter 13 Plan states that "Creditors within this class shall retain their liens on the collateral that is security for their claims until the earlier of: (1) the date the underlying debt, as determined by non-bankruptcy law, has been paid in full; or (2) the date discharge is entered under § 1328." Standing Order 17-02 "Consolidated Standing Order Adopting District Form Chapter 13 Plan" dated October 16, 2017.
[8] Because the Court is denying Ovation's Objection and resetting confirmation, the Trustee may propose the manner and frequency that Ovation must make periodic disclosures.

5

LEGAL ANALYSIS

I. **The Trustee is Not Required to File a Written Objection to be Heard at Confirmation.**

The first issue is whether the Trustee must file a written objection to Debtor's Plan to have standing to object to confirmation of Debtor's Plan and oppose Ovation's Amended Objection. Ovation argues that under Rule 3015 all parties in interest must file an objection to a chapter 13 debtor's plan for the party to be heard on confirmation. Because the Trustee is a party in interest, Ovation also argues that the Court's Standing Order cannot waive the requirement to file an objection for the Trustee alone.

Section 1302 states that the United States trustee appoints an individual to serve as the standing trustee in chapter 13 cases. The chapter 13 trustee's duties are listed in § 1302(b), which incorporates a chapter 7 trustee's duties under § 706(a)(2-7) and (a)(9). Section 1302(b)(2)(B) states that a chapter 13 trustee shall appear and be heard, *inter alia*, on confirmation of a plan. The Ninth Circuit held that the "requirement to appear and be heard" would be illusory if the trustee could not object when the plan fails to comply with the provisions of the Bankruptcy Code. ***Andrews v. Loheit***, 49 F.3d 1404, 1408 (9th Cir. 1995). Further, a chapter 13 trustee has statutory duty to appear and be heard on plan confirmation. ***Meyer v. Hill***, 268 B.R. 548, 554 (9th Cir. B.A.P. 2001) (citations omitted). The plain language of § 1302 confers standing on the trustee to object to a chapter 13 plan. ***Austin v. Bankowski***, 519 B.R. 559, 565 (D. Mass. 2014).[9]

Ovation is correct that Rule 3015(f) states that objection shall be filed and served at least seven days before the confirmation hearing. Ovation's contention that Rule 3015(f) requires all parties in interest to object in writing, however, is not supported by the Rule's text. The Rule does not explicitly say who must file an objection to a debtor's chapter 13 plan, but the Court recognizes

---

[9] The Court acknowledges that the chapter 13 trustee did file an objection to debtor's plans in the cases cited.

6

that the requirement could apply to all parties, including a chapter 13 trustee. That said, § 1302 unequivocally states that a chapter 13 trustee shall appear and be heard on confirmation of a plan. There is no requirement that a chapter 13 trustee file a written objection under § 1302. Notably, the issue here is not the filing of an objection to a debtor's chapter 13 plan, but rather a trustee's response to a creditor's objection. The Court questions whether Rule 3015(f) applies here. The Court does not discern any conflict between the Court's Standing Order and the Bankruptcy Rules and Code, and therefore finds Ovation's argument unavailing. Moreover, Ovation's argument that the Trustee's Response violates Ovation's due process rights is incorrect because the Trustee's Response is simply the Trustee's position on confirmation of Debtor's Plan.

As a corollary to Ovation's argument that a local rule cannot override a statute or rule, Ovation argues that the Fifth Circuit's decision in **In re Kinion**, 207 F.3d 751, 757-58 (5th Cir. 2009) applies to the case at bar. The court in **Kinion** considered, *inter alia*, whether a bankruptcy court could avoid a creditor's lien through the reaffirmation hearing process as opposed to filing an adversary proceeding. *Id.* at The Fifth Circuit examined whether a local rule allowing reaffirmation agreements to strip a creditor's lien violated the Bankruptcy Code. *Id.* The Fifth Circuit found that a bankruptcy court's local rule could not contradict the Bankruptcy Code or Rules. *Id.* at 757. As a result, the Fifth Circuit held that a party attempting to avoid a lien can only do so by filing an adversary proceeding, not by local rule. *Id.* at 758.

Ovation suggests that the Fifth Circuit's holding in **Kinion** should be applied to the Court's standing order regarding adoption of the District Wide Form Chapter 13 Plan. Ovation reasons that because § 7.8 of the District Wide Form Chapter 13 Plan would avoid Ovation's lien after payment of its pre-petition claim, that the District Wide Form Chapter 13 Plan is contrary to statutory law because Ovation would not retain its lien to enforce its right for payment of post-

7

petition attorney's fees and costs. Ovation's argument presumes that it has no remedy for payment of its post-petition attorney's fees and costs. As discussed herein, Ovation's remedy is to file a motion or application for attorney's fees and costs under § 506(b). In doing so, Ovation would preserve its lien until all of its fees and costs are paid. Further, the implication that the Court's District Wide Form Plan is contrary to the Code is unavailing in this context.

II. **11 U.S.C. § 505 does Not Govern determination of Ovation's Post-Petition Claim for Attorney's Fees and Costs.**

The second issue before the Court is whether 11 U.S.C. § 505 governs the determination of Ovation's post-petition claim for attorney's fees and costs?

Section 505(a)(1) states:

Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

Ovation argues that, as a statutory tax lien holder, that the only provision of the Bankruptcy Code that applies to determination of its post-petition claim is § 505.[10] Further, Ovation contends that because only § 505 applies to statutory tax claims and presumably a tax claimant's request for post-petition attorney's fees and costs, a court cannot require Ovation to file a motion or application under § 506. Stated differently, Ovation contends that § 505 precludes a court from requiring a tax claimant such as Ovation to file a §506(b) application or motion for post-petition attorney's fees and costs. In support of its position, Ovation provided the Court with authorities which the Court will discuss. None of the cases cited to the Court suggest or find that a § 505

---

[10] This Court has previously determined that Ovation has a statutory tax lien, and that Rule 3002.1 does not apply. **In re Reed**, No. 17-52875, 2021 WL 4395821 (Bankr. W.D. Tex. Sept. 24, 2021). Therefore, Ovation reasons that it is not required to provide disclosures of post-petition attorney's fees and costs pursuant to Rule 3002.1 which only applies to security interest in a debtor's principal residence.

8

motion is the only means for adjudicating a tax claimant's entitlement to post-petition attorney's fees and costs.

The Fifth Circuit considered in *In re Taylor*, 132 F.3d 26 (5th Cir. 1998) the res judicata effect of a confirmed chapter 11 plan on the IRS's ability to collect against a responsible officer tax penalty under 26 U.S.C. § 6672. Further, the court considered whether the debtor's failure to invoke § 505 determination in bankruptcy court precluded the IRS from assessing the responsible officer liability. Ovation is correct in asserting that the Fifth Circuit found in *Taylor* that a § 505 motion is the normal procedure to determine the amount of a tax debt and that the debtor (or the IRS) should file a motion requesting such determination. *Id.* at 262. (citation omitted). The court also stated that § 505 authorizes a bankruptcy court to determine the amount or legality of any tax whether tax was or was not previously assessed. *Id.* (citation omitted). Nonetheless, the primary issue in *Taylor* was whether a chapter 11 plan could substitute for the filing of a § 505 determination. *Id.* The Fifth Circuit emphasized that any purported res judicata effect a chapter 11 plan had regarding a separate tax liability under 26 U.S.C. § 6672 was misplaced because the payroll tax liability in the chapter 11 plan is different than the responsible officer liability under 26 U.S.C. § 6672. *Id.* As such, the court concluded "that the confirmation of a plan does not itself invoke the tax determination process." *Id.* at 263.

The Court finds that Ovation's reliance on *Taylor* for the general proposition that § 505 applies to Ovation's post-petition claim for attorney's fees and costs is incorrect because this Court is not asked to determine Ovation's tax liability, but rather Ovation's entitlement to attorney's fees and costs. Moreover, assuming that Ovation's attorney's fees and costs are part of its tax debt, the Court finds that Ovation cannot extrapolate the Fifth Circuit's holding in *Taylor* to apply to a bankruptcy court's determination of post-petition attorney's fees and costs.

9

The Fifth Circuit in *In re Kizzee-Jordan*, 626 F.3d 239 (5th Cir. 2010) considered whether interest on a tax claim created under the Texas Tax Code § 32.06 could be modified notwithstanding § 511(a) of the Bankruptcy Code.[11] In *Kizzee-Jordan*, Tax Ease paid the debtors' ad valorem taxes. *Id.* at 240. The debtors executed a promissory note and deed of trust as security for the indebtedness. *Id.* The question before the bankruptcy court was whether the execution of a promissory note and deed of trust created a new debt and claim such that the indebtedness was no longer a "tax debt". *Id.* at 241. The consequence of Tax Ease's claim no longer being a tax claim would mean that the anti-modification of interest limitation under § 511 on Tax Ease's claim would not apply and the debtors could propose an interest rate less than the required statutory rate of interest required by the Texas Tax Code. *Id.* at 242.

The Fifth Circuit found that Tax Ease's claim was a tax claim and that the interest rate on the payment of its claim could not be modified under § 511. The Court found that:

> Moreover, the Texas statutory scheme provides that upon payment to the taxing authorities and transfer of the tax lien, the transferee is subrogated to all the rights and remedies of the taxing authorities. If the tax claim were extinguished upon payment by the transferee and replaced by a new debt, there would be no need to provide for rights of subrogation because the transferee could simply prosecute the new debt. Instead, the subrogation rights flow from the original tax debt. As a subrogee, Tax Ease should enjoy at least the same advantages and disadvantages of its claim as the taxing authorities would have, including the application of § 511 for the tax claim.

*Kizzee-Jordan* at 245 (internal footnotes omitted) (citations omitted).

*Kizzee-Jordan* did not discuss whether tax claims are subject to § 506. The Court recognizes that the Fifth Circuit found that Tax Ease, and claim holders such as Ovation, cannot have their underlying claims modified under the Bankruptcy Code. Further, as this Court has

---

[11] Subsection (a) provides that "[i]f any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law." 11 U.S.C. § 511(a).

10

previously noted, Ovation's claim is not subject to Rule 3002.1.[12] ***Kizzee-Jordan*** is inapplicable to the primary issue in this case, which is whether Ovation can be compelled to file a § 506(b) motion or application for its post-petition attorney's fees and costs. ***Kizzee-Jordan*** cannot be construed to mean that §505 is the Bankruptcy Code provision that governs Ovation's claim for post-petition attorney's fees and costs.

### III. The Texas Finance Code Permits Ovation to Seek Attorney's Fees and Costs as Allowed under the Bankruptcy Code, but that Conclusion does not resolve the Ultimate Issue.

The Texas Finance Code provides that a "contract between a property tax lender and a property owner may require the property owner to pay the following costs after closing: … to the extent permitted by the United States Bankruptcy Code, attorney's fees and court costs for services performed after the owner files a voluntary bankruptcy petition." Tex. Fin. Code Ann. § 321.0021(a)(5) (West 2021). Trustee argues this statutory allowance means Ovation can only recover its post-petition fees and costs as allowed under the Code. (Hearing Transcript, 93:25-94:24). Trustee further argues that Section 506(b) is the mechanism provided by the Code. (*Id.*). The Trustee is correct that the Texas Finance Code allows for recovery of post-petition attorney's fees and costs as allowed under the Code; but that conclusion does not answer any pertinent question.

### IV. The Basic Concept that Unsatisfied Liens Survive Discharge also does not resolve the Ultimate Issue.

The fourth issue before the Court is whether Ovation's lien for its unpaid attorney's fees and costs will pass through bankruptcy and survive discharge even if its underlying proof of claim is paid in full. Ovation argues that its lien cannot be discharged until its post-petition attorney's fees and costs are paid. Ovation reasons that because liens survive discharge until satisfied in full,

---

[12] *Supra* note 10.

11

and because it does not intend to seek payment of its post-petition attorney's fees and costs through the bankruptcy, the lien will pass through bankruptcy. After the lien has passed through bankruptcy, Ovation will still have recourse against the Debtor and may seek payment of its post-petition attorney's fees and costs after discharge, if the Debtor obtains a discharge.

Ovations cites *In re Simmons*[13] and *Matter of Howard*[14] to support its position that unsatisfied liens survive a bankruptcy discharge. No party disputes the bedrock principal that liens not satisfied in bankruptcy survive bankruptcy. *See Simmons*, 765 F.2d at 556 ("It is clear under the Code that any statutory lien that is valid under state law remains valid through bankruptcy unless invalidated by some provision of the Code."). Ovation is correct that both *Simmons* and *Howard* draw upon this basic bankruptcy premise.

But neither *Simmons* nor *Howard* is analogous to this case. A secured creditor in *Simmons* was incorrectly listed in the debtor's plan as unsecured. *Simmons*, 765 F.2d at 549. The creditor did not object to the plan, so its status under the plan was never corrected. *Id.* at 549-50. In a related adversary proceeding, the debtor argued that because the creditor did not object at confirmation, the creditor was bound by how the plan treated the creditor. *Id.* at 550-51. The Fifth Circuit held that a plan is not the proper means to object to a proof of claim. *Id.* at 553. Much of *Simmons* reasoning focuses on putting the secured creditor on notice that its lien may be at risk if it does not participate at confirmation. *Id.* at 552-53. "*Simmons* represents a limited exception to the general rule" "that a confirmed plan is *res judicata* as to all parties who participate in the confirmation process" because a debtor must object to a claim to challenge its status as secured so the creditor is on notice. *Howard*, 972 F.3d at 641 (italics in original).

---

[13] **Simmons v. Savell (In re Simmons)**, 765 F.2d 547, 556 (5th Cir. 1985). Ovation cites *Simmons* in its Objection. (ECF No. 11, at 2).
[14] **Sun Fin. Co., Inc. v. Howard (In re Howard)**, 972 F.2d 639 (5th Cir. 1992). Ovation cited *Howard* at argument, *see* Hearing Transcript 38:20-39:17, but not in its Objection.

The plan in *Howard* provided that the secured creditor would be paid $500 of its debt in full compromise of the debtor's claim against Sun for unfair and deceptive trade practices. *Id.* at 640. The debtors did not object to the creditor's proof of claim; and the creditor did not object to plan confirmation. *Id.* Applying *Simmons*, the Fifth Circuit determined that the creditor was not on notice that its lien was at risk if it did not participate in confirmation because the debtors never objected to the proof of claim. *Id.* at 642. Because the debtors in *Howard* never objected to the creditor's claim, the creditor was not bound by the treatment of its claim in the confirmed plan. *Id.*

Thus, *Simmons* and *Howard* are about what a debtor must do to challenge a secured creditor's claim (object to put the creditor on notice) and what effect the debtor's (in)action has on whether the treatment of the claim under the plan binds the creditor. Here, it is Ovation who objects; and Ovation does not object because the Plan aims to challenge the status of Ovation's claim. This case is factually and procedurally distinct from *Simmons* and *Howard*. Moreover, though *Simmons* and *Howard* reference the fundamental principal that unsatisfied liens are not discharge, that concept does not address the ultimate issue before the Court.

V. **Ovation Must Apply under § 506(b) to Receive Its Post-Petition Attorney's Fees and Costs, if it seeks them at all, once a Debtor files Bankruptcy.**

The key issues are whether § 506 applies to Ovation and whether Ovation is required to file a motion or application with this Court to have its attorney's fees and costs allowed and paid through the Debtor's Plan. Ovation's principal argument is that it cannot be compelled to submit to this Court's jurisdiction and have the allowance and payment of its attorney's fees and expenses adjudicated in this Court. Ovation reasons that neither § 506(b) nor its legislative history require Ovation to seek compensation through § 506. The Court disagrees. The Court finds persuasive the

bankruptcy court's opinion in *In re Gift*, 469 B.R. 800 (Bankr. M.D. Tenn. 2012) as to the issue of whether § 506(b) applies to oversecured statutory tax claims.[15]

The *Gift* court began its analysis by noting that § 502 controls the overall question of whether a creditor's claim will be allowed or disallowed. 469 B.R. at 803 (citations omitted). The court recognized that § 506(b) provides a roadmap for determining whether and to the extent a claim is secured. *Id.* Section 506(b) states:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

In other words, oversecured creditors are allowed interest, reasonable attorney's fees, costs, or charges allowed by agreement or by state law.

The *Gift* court observed that an oversecured creditor, having an allowed claim under § 502, looks to § 506(b) to determine what amounts may be added to its claim because it is oversecured. *Id.* The court examined the legislative history of § 506(b), noting that in 1994 only consensual lienholders were entitled to post-petition fees and expenses. *Id.* at 805 (citing **Bondholder Comm. V. Williamson Cnty. (*In re Brentwood Outpatient, Ltd.*)**, 43 F.3d 256, 258 (6th Cir. 1994)). The Sixth Circuit observed that prior to the 1978 Code, courts were divided in allowing post-petition interest on nonconsensual liens given that case law at the time was mixed in allowing post-petition fees and costs for nonconsensual liens. *Gift* at 805. The *Gift* court then found that the Supreme Court's ruling in *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989) resolved the issue of whether nonconsensual lienholders could be paid post-petition interest on its claims. The

---

[15] The court's holding in *Gift* that a taxing authority was not entitled to 6% annual penalty under § 506(b) was overturned by passage of a Tennessee statute. *See* **In re Bratt**, 549 B.R. 462, 465 (B.A.P. 6th Cir. 2016) (explaining that the Tennessee statute governing tax penalties is not subject to consideration under § 511).

Supreme Court found that oversecured creditors are entitled to post-petition interest without qualification under § 506(b). *Gift* at 806 (citing ***Ron Pair***, 489 U.S. at 241). The ***Gift*** court then noted that BAPCPA amended section 506(b) by adding "or State statute," thereby effectively putting consensual and nonconsensual liens on a level playing field." *Gift* at 806.[16] This Court finds, based upon the Supreme Court and Fifth Circuit precedent, that that a nonconsensual lienholder may request post-petition attorney's fees and costs for its oversecured claim.

The Fifth Circuit has held that a secured creditor must make application under § 506(b) for the payment of its attorney's fees and costs in the context of a foreclosure sale. ***In re 804 Congress, L.L.C.***, 756 F.3d 368 (5th Cir. 2014). The case involved distribution of proceeds from the foreclosure of an office building. *Id.* at 371. The substitute trustee proposed to pay the trustee's commissions and the secured creditor (Wells Fargo) attorney's fees without bankruptcy court approval. *Id.* at 372. The bankruptcy court found that it had jurisdiction over the sale proceeds and their distribution. *Id.* The bankruptcy court also determined that because Wells Fargo did not make application with the court or provide evidence in support of Wells Fargo's fees and expenses, that Well Fargo's fees and expenses should be denied. *Id.* On appeal, the district court found that after the bankruptcy court lifted the stay, the bankruptcy court no longer had jurisdiction over the disposition of the assets. *Id.*

The Fifth Circuit held that "federal law governs what is to be distributed to a secured claimant that is oversecured." *Id.* at 373. (footnote omitted). The Fifth Circuit further stated:

> By the terms of § 506(b), an oversecured creditor may recover, on a secured basis, "fees, costs, or charges provided for under the agreement ... under which such claim arose," such as the Deed of Trust at issue in this case, but only to the extent that the fees, costs, or charges are reasonable. We do not read § 506(b) as applying only when a sale occurs by the trustee in bankruptcy under § 363.

---

[16] *Accord* **In re McLemore**, 426 B.R. 728, 747 (Bankr. S.D. Ohio 2010) (through the BAPCPA, Congress amended § 506(b) to provide for such fees and charges not only with respect to consensual arrangements but also when a "State statute" provides for them) (internal footnote omitted).

15

*804 Congress*, 756 F.3d at 373.

The Fifth Circuit also held that when Congress enacted § 506(b), Congress intended that federal law should govern the enforcement of attorney's fees provisions, notwithstanding contrary state law. *Id.* at 374 (footnote omitted). Further, the Fifth Circuit noted that the Supreme Court in *Ron Pair* "clearly indicated that § 506(b) would govern post-petition claims for fees, costs, or charges provide for under the agreement from which the claim arose." *Id.* at 375 (footnote omitted). The Fifth Circuit stated that the Supreme Court in *Ron Pair* found that the recovery of fees, costs, and charges is allowed only if they are reasonable and provided for in the agreement. *Id.* (footnote omitted).

Ovation attempts to obscure the Fifth Circuit's reasoning in *804 Congress* by confining its holding to the facts of that case. This Court can find nothing in *804 Congress* that suggests or limits the Fifth Circuit's reasoning only to foreclosure sales or chapter 11 cases. Rather, the Fifth Circuit's opinion is based upon a statutory provision—§506(b)—that applies to all oversecured creditors (consensual and nonconsensual) and to all chapters under the Code. Therefore, Ovation's argument that § 506(b) does not apply to its statutory tax claim is not supported by statute or applicable law. This Court agrees with the Bankruptcy Court for the Southern District of Texas which found:

> In sum, over-secured creditors have the ultimate burden of proof of showing they are entitled to post-petition fees, including proving a referenced agreement with the debtor or a state statute which allows the over-secured creditor to collect post-petition attorneys' fees. Requiring a separate § 506(b) application allows the court an opportunity to determine whether an agreement or State statute exists at the time of the petition's filing and to enter an order establishing that such an agreement or state statute authorizes the over-secured creditor to collect post-petition attorneys' fees. Moreover, having over-secured creditors file a § 506(b) application is appropriate because they bear the ultimate burden of proof to establish their entitlement to post-petition fees.

*In re Jack Kline Co., Inc.*, 440 B.R. 712, 732-33 (Bankr. S.D. Tex. 2010) (citations omitted). If Ovation wants Debtor to pay Ovation's post-petition attorney's fees and costs, Ovation must apply under § 506(b).

**VI. Rule 2016 Applies to All Entities that Seek Compensation from the Estate, and because the Court holds that Ovation must Seek its Post-Petition Attorney's Fees and Costs from the Estate if all at, Rule 2016 Applies to Ovation.**

The final issue before the Court is whether Fed. R. Bankr. P. 2016 applies to Ovation. Ovation takes the position that it is not required to comply with Rule 2016 to have its fees paid. Ovation argued at the hearing that Rule 2016's applicability to secured creditors is unclear after *In re Wilborn*, 609 F.3d 748 (5th Cir. 2010). (Hearing Transcript, 8:23-9:3). Ovation posited that Rule 2016 applies only to estate professionals. (Hearing Transcript, 36:21-22).

Ovation is simply wrong. Neither Rule 2016 nor *Wilborn* support Ovation's position. Rule 2016(a) provides:

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity. Unless the case is a chapter 9 municipality case, the applicant shall transmit to the United States trustee a copy of the application.

The Court observes that the plain text of the Rule refers broadly to "an entity" seeking compensation and explicitly discusses applications filed to pay a creditor's attorney. Fed. R. Bankr.

17

P. 2016(a). Subsections (b) and (c) of Rule 2016 set out specific requirements for disclosures by debtor's counsel and petition preparers who seek compensation from the estate. Fed. R. Bankr. P. 2016(b)-(c).

*Wilborn* concerned post-petition fees charged by secured creditor Wells Fargo to a putative debtor class of homeowners in chapter 13 bankruptcies. The putative class alleged that Wells Fargo's practice of charging post-petition fees without disclosure avoided court oversight and thus violated § 506(b) and Rule 2016. 609 F.3d at 750-51. *Wilborn* arises in the procedural posture of a motion to certify a class under Federal Rule of Civil Procedure 23. (*Id.* at 755). The *Wilborn* court noted "disagreement between the bankruptcy courts as to the scope of the requirement under § 506(b) of the Bankruptcy Code and Rule 2016 for lenders to obtain court approval before assessing contractually-owed fees." (*Id.* (collecting contrasting cases in n.19)). In the next sentence, the *Wilborn* court wrote that "[f]or purposes of reviewing the certification order, [it would] assume, without deciding, that prior disclosure and approval are necessary." (*Id.* (citing *Langbecker v. Electronic Data Sys. Corp.*, 476 F.3d 299, 306 (5th Cir. 2007) (federal courts cannot assess the merits of a case at class certification))).

This Court finds both *Wilborn's* assumption and reason for declining to rule on the issue instructive. *Wilborn's* tone contradicts Ovation's position that *Wilborn* casts doubt on a requirement for secured creditors to file a Rule 2016 application for compensation. The *Wilborn* court "assume[d]" that Rule 2016 disclosure and court approval are necessary for a secured creditor to be compensated from the estate for fees and costs. 609 F.3d at 755. Moreover, *Wilborn* reads as if the procedural posture (class certification) was the only thing keeping the Fifth Circuit from reaching the issue. *Id.* In other words, *Wilborn* implies that secured creditors like Wells Fargo and Ovation must comport with Rule 2016 to receive compensation from the estate.

18

*Wilborn's* suggestion aligns with the caselaw from our sister courts. Thirteen years before *Wilborn*, the United States Bankruptcy Court for the Southern District of Texas unambiguously wrote in *In re Major Funding Corp.* that

> *[a]ny entity* seeking compensation or reimbursement from the estate must submit to the court an application conforming to the requirements of Bankruptcy Rule 2016(a). This rule applies to a creditor, committee, or other entity that files an application for payment by the estate of fees of professionals retained by the entity.

216 B.R. 602, 605-06 (Bankr. S.D. Tex. 1997) (emphasis added). Three years before *Wilborn*, the Southern District again held that creditors are required to comply with Rule 2016 in order to receive compensation or reimbursement from the estate. *In re Padilla*, 379 B.R. 643, 654 (Bankr. S.D. Tex. 2007) ("*Texas Padilla*"). "Rule 2016(a)'s plain language and case-law require creditors to file a Rule 2016(a) applications before seeking compensation for Reimbursable Expenses incurred post-petition but prior to a plan's confirmation." (*Id.* (collecting cases)). The Bankruptcy Court for the Northern District of Texas concurs: "[a]ll attorney's fees to be paid by debtors in bankruptcy cases must be approved by the Bankruptcy Court." *In re Allen*, 215 B.R. 503, 504 (Bankr. N.D. Tex. 1997) (attorney's fees for secured creditor with whom debtor reaffirmed mortgage).

*Wilborn* cites only two opinions, one of which is unreported: *In re Padilla*, 389 B.R. 409, 443 (Bankr. E.D. Pa. 2008) ("*Pennsylvania Padilla*") and *In re Aldrich*, Nos. 08-00520, 08-00734, 2008 WL 4185989, at *2-3 (Bankr. N.D. Iowa Sept. 4, 2008). Both these cases are non-binding and out-of-Circuit. *Pennsylvania Padilla* and *Aldrich* involved mortgage creditors who sought payment of post-petition legal expenses, and both courts found that Rule 2016, by its plain language, did not apply to the creditors because those creditors sought payment from their fees outside the bankruptcy. In other words, Rule 2016 did not apply because the creditors did not seek compensation from the estate.

Whether the entity seeks its compensation in or outside the bankruptcy, thus, determines Rule 2016's applicability. A creditor's status as secured or unsecured is irrelevant to the applicability question, despite Ovation's contention. If the Court were to allow Ovation to seek its fees outside of bankruptcy, Ovation would be correct that ***Wilborn***—to the extent it cites ***Pennsylvania Padilla*** and ***Aldrich***—supports its position that Ovation can collect outside of bankruptcy. But that is not what the Court holds today. If Ovation wants its lien paid through bankruptcy, it must seek its fees in bankruptcy. Just like any other entity seeking fees in bankruptcy, Rule 2016(a) applies to Ovation.[17]

## Conclusion

IT IS, THEREFORE, ORDERED Ovation's Amended Objection to Debtor's Amened Plan is OVERRULED.

IT IS, THEREFORE, FURTHER ORDERED that Ovation is PRECLUDED from raising these arguments again at plan confirmation.

IT IS, THEREFORE, FURTHER ORDERED that confirmation of Debtor's Amended Plan is reset until February 16, 2023.

# # #

---

[17] Recently, Ovation made similar arguments to the United States Bankruptcy Court in ***In re Martin***, No. 22-30148, 2022 WL 16937609 (Bankr. S.D. Tex. Nov. 14, 2022). The bankruptcy court rejected Ovation's arguments and found that under the court's form chapter 13 plan, that Ovation must file a § 506(a) application for attorney's fees and costs. *Id.* at *5-6.